AE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GLEN LAKEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 2725 |
| v. ) | |
| ) | Judge John W. Darrah |
| FEDERAL BUREAU OF PRISONS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Glen Laken, filed suit in the United States District Court for the Northern District of Illinois against Defendant, the Federal Bureau of Prisons ("FBP"), alleging violations of the Privacy Act, 5 U.S.C. § 552a *et al.* Defendant has moved to transfer venue to the United States District Court for the Northern District of Georgia.

A reading of Plaintiff's Complaint supports the following summary of the alleged conduct of the parties.

In 2000, Plaintiff, an Illinois resident, was convicted by a jury of various violations of the mail and wire and securities fraud violations. Plaintiff was sentenced to a 63-month term of imprisonment and a period of supervised release, in a combined sentencing proceeding in which Plaintiff was also sentenced upon a guilty plea to securities fraud conspiracy in a separate case. The sentencing court recommended that Plaintiff be designated to a federal prison camp in Elgin, Florida, and that he participate in an intensive alcohol treatment program.

Shortly thereafter, the Regional Designator for the Northeast Region of the FBP entered information concerning Plaintiff into the database of the FBP. Some of the information entered into the database indicated that Plaintiff was a member and/or associate of a crime family and that he had

been charged with or participated in a criminal conspiracy for the solicitation of murder of a government informant. Based on this and other erroneous information entered into the database, Plaintiff was not eligible to be placed in a federal prison camp or for admission to certain other programs. In March 2004, Plaintiff was placed in a federal correctional institution in Coleman, Florida.

After being placed in Coleman, Florida, Plaintiff attempted to have his FBP records corrected through appropriate administrative means. The United States Probation Office determined that errors in Plaintiff's records existed as to membership with organized crime, his participation in the solicitation of murder, and his being a violent person. Plaintiff's probation officer met with Plaintiff and informed him that she would submit the appropriate paperwork to cause his immediate transfer to a prison camp. In April 2004, the appropriate paperwork was submitted for Plaintiff's transfer to a federal prison camp.

In May or June 2004, the Southeast Regional Designator, Kathy Lane, received Plaintiff's transfer paperwork. Lane informed prison officials at Coleman, Florida, that she was designating Plaintiff to a federal prison in Atlanta, Georgia. When the Coleman, Florida prison officials told Lane that Plaintiff needed to be placed in a federal prison camp, she refused, relying on the erroneous information contained in the FBP database. Plaintiff and others on his behalf attempted to address the placement of Plaintiff in Atlanta because that facility did not offer programs for Plaintiff's religious and rehabilitative needs. In June 2004, Plaintiff's case manager informed him that Lane designated Plaintiff to a satellite prison camp in Atlanta, Georgia. Plaintiff proceeded to file the

appropriate requests to be placed in a prison camp near his home in Illinois. In June 2004, Plaintiff was transferred to a federal detention center in Tallahassee, Florida, and then to a prison in Atlanta, Georgia.

In July 2004, Plaintiff was informed by prison officials in Atlanta that the inaccurate and erroneous information was still in the FBP database. That same month, Plaintiff's family members told Plaintiff that the database had not been corrected. Prison officials in Atlanta confirmed that the database still contained the erroneous information. Plaintiff remains incarcerated in Atlanta, Georgia.

Defendant seeks to have the present case transferred to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. §1404(a). In general, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). A transfer is proper if: (1) venue is proper in both the transferee and transferor courts; (2) it is for the convenience of the parties or witnesses; and (3) it is in the interest of justice. *Law Bulletin Publishing Co. v. LRP Publications, Inc.*, 992 F.Supp. 1014, 1017 (N.D.Ill. 1998) (*Law Bulletin*). District courts have broad discretion to grant or deny motions to transfer, and the burden is on the moving party to establish that the transfer is warranted. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

Venue is proper in both the United States District Court for the Northern District of Illinois (Plaintiff's residence before incarceration) and the United States District Court for the Northern

3

District of Georgia. *See* 5 U.S.C. 552a(g)(5) (venue proper where complainant resides, complainant's principal place of business, where the agency records are situated or in the District of Columbia).

When evaluating the relative convenience of the parties and witnesses, the court considers: (i) the plaintiff's initial forum choice, (ii) the convenience of the witnesses, (iii) the relative ease of access to other evidence, (iv) the situs of the material events, and (v) the relative convenience of the parties in litigating in the respective forums. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000) (*Amoco*); *Georgouses v. Natec Resources, Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) (*Georgouses*).

The plaintiff's initial choice of forum is usually afforded substantial deference, particularly when it is the plaintiff's home forum. *Kamel v. Hill-Rom Company, Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). However, there are other factors to consider; and the weight given to the plaintiff's choice of forum can vary, depending on the circumstances of each individual case. *Georgouses*, 963 F. Supp. at 730; *Law Bulletin*, 992 F. Supp. at 1017. For example, where the plaintiff's choice of forum is not the situs of the material events, plaintiff's choice of forum is entitled less deference. *See Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1129 (N.D. Ill. 1989).

In the instant case, Plaintiff chose to bring suit in the Northern District of Illinois, his place of residence before his incarceration. However, the alleged violations of the Privacy Act took place near Georgia; the allegedly erroneous records and the Plaintiff are located within the Northern District of Georgia. Deference is granted to Plaintiff's initial forum. However, because the situs of the material events took place outside of Illinois, deference to Plaintiff's choice of forum is diminished.

The convenience of the witnesses who will testify at trial is also a factor to consider in determining an appropriate forum. *Law Bulletin*, 992 F. Supp. at 1018.

Here, most of the relevant witnesses are located within or near the Northern District of Georgia. These witnesses include Plaintiff, Lane, Plaintiff's case manager, Plaintiff's unit manager, and the Regional Director of the BPF. No witnesses from Illinois are identified or referenced in the Complaint. Thus, this factor weighs in favor of granting the Defendant's motion.

Regarding the ease of access to other evidence, the evidence for this litigation is likely to be found in or near the Northern District of Georgia. Thus, this factor weighs in favor of granting Defendant's motion.

The determination that a transfer is in the interest of justice focuses on the efficient administration of the court system, as opposed to the private considerations of the litigants. *Amoco*, 90 F. Supp. 2d at 961. This includes considering: (i) the relative familiarity of the courts with the applicable law, (ii) the relation of the respective forums with the issue in the case, and (iii) the relative congestion of the court dockets. *Amoco*, 90 F. Supp.2d at 961; *Georgouses*, 963 F. Supp. at 730.

Both the Northern District of Illinois and the Northern District of Georgia are familiar with the substantive law. There is no evidence that the relative congestion of either court weighs in favor of nor against a transfer. Lastly, the Northern District of Georgia may have more of an interest in providing a forum for this lawsuit because the documents and witnesses are located in or near the Northern District of Georgia.

Plaintiff argues that a transfer will put a financial burden on his ability to prosecute the case and that the United States has more funds to pay for the needed expenses for the case to proceed in

Illinois. Other than Plaintiff's conclusory statement that a transfer will create a financial burden on his ability to prosecute the case, Plaintiff presents no specific information how a transfer of the suit to Georgia, where Plaintiff is presently incarcerated, would cause a financial burden. Furthermore, the Court can take into consideration the expense ultimately borne by the tax-payers when a suit is filed in a remote forum. *See In re National Presto Industries, Inc.*, 347 F.3d 662, 664 (7th Cir. 2003). This expense would include the need to have Plaintiff, a federal prisoner, transferred to the Northern District of Illinois, if the case proceeds to trial.

In sum, the above factors weigh in favor of granting Defendant's Motion to Transfer Venue to the Northern District of Georgia. Defendant's Motion for Transfer to the Northern District of Georgia is granted.

Date: September 8, 2005

JOHN W. DARRAH
United States District Judge